The opinion of the court was delivered by
Manning, O. J.
James P. Ereret died in 1869, leaving a widow and thirteen children, three of .whom were minors. In 1875, all the heirs being then of age, they petitioned the Second Court of Orleans for recognition as heirs, and to be put in possession of his estate, and requiring the widow, who was the representative of the succession, to file an account. This suit was filed October 1st. and judgment was rendered on 5th. of same month, recognising the petitioners as heirs, and ordering that they be placed in possession of the property. Nothing was decreed touching the prayer for an account.
On the 8th. of the same month, Herminie, one of the heirs, brought an action against her co-heirs and the widow for a partition, alleging that her mother had formally waived and renounced her rights as usufructuary (all the property was community), and that the heirs “have been recognised as such by the proper court, and placed in possession of the estate of their father,” and concludes with the averment “ that she is unwilling longer to hold said property in common, and therefore prays that the parties” be cited, and a partition be decreed. Each defendant took the trouble of filing a separate answer, all admitting the correctness of the plaintiff’s allegations, and joining in the prayer for a partition. Judgment was rendered November 3, 1875, beginning with the recital “the court considering the pleadings and the evidence, from which it results that the parties to this suit are owners in common of *507 the property described in the petition,” and concludes with a decree for partition by licitation, the experts having reported adversely to one in kind. .
Pursuant to this decree, a public sale was made December 21,1875, by the auctioneer, and the widow bought the whole property, the sum total of the several adjudications being forty-one thousand five hundred and one dollars. On the 21st. of the following month, the formal Act of sale before a notary was made by all the heirs to the purchaser, reciting that, in obedience to the judgment of partition, a public sale of the property had been made by an auctioneer, and “ in order to furnish to the purchaser an authentic deed of conveyance of the property thus, adjudicated to her,” they then and there transfer the title to the widow Ereret.
This notarial Act goes on to recite that, “whereas the estate of the-late James P. Ereret is indebted in the following specified sums, as per tableau filed in court in the matter of the succession of J. P. Ereret, the said widow Ereret, as purchaser, assumes personally the payment thereof in reduction of the price of the present sale,” and furthermore recognises and assumes the mortgages which may secure those debts, which-are then set forth seriatim. They amount to $15,300.00. There was due to the widow for paraphernal funds, and for the balance due her on her account of her administration filed in court, $9,014.98, and the residue of the purchase price was therefore $17,180.02. Half of this belonged to the widow in community, for it must be noted, that the property, which was sold, was not the undivided half that belonged to the deceased, but the whole and entire property which was owned in common by his heirs and his widow in community. The remaining half, divided among thirteen children, gave $661.00 as each one’s portion of the purchase price.
Prior to the filing of either the petition for recognition of heirs, or the suit for partition, and evidently as a preparatory step thereto, the-widow had prepared the final account of her administration, and on the-day previous to the actual filing of the first, had sworn to its correctness. And that this is the final account, and that it was approved by all the heirs, is shewn by the fact that the sum stated by them and by her before the notary in January, as being due her “ as per account filed-in court by her,” corresponds exactly with the sum stated as a balance due her in the account, sworn as correct on September 80, 1875. It is-twice mentioned in the notarial Act, — first as “ the tableau filed in court in the matter of the succession of James P. Ereret,” as containing statement of the debts, and second as “ the account filed in court.” And this explains the omission in the decree of any order to file an account. It evidently was waived because they who had called for it had been *508 furnished with it. The whole proceedings were conducted contradictorily in form, but manifestly only-nomiually, and they not only knew of the final account, but supposed it had been filed in court, and so stated before the notary — they treated it as a finality and as being correct, and they were all majors. But it had not been filed in court, and was not until seventeen days after the notarial act of sale was passed, i. e. on February 7,1876. A creditor of two of the heirs, claiming to be ■owner of their shares of their father’s succession under a judicial sale, opposed the account. It was homologated so far as not opposed two weeks afterwards, i. e. February 21st, and the. claim of ownership was unsuccessful. Hickman v. Freret, 30 Annual, 1067. No other homologation was ever sought, and none was needed.
In July 1878, shortly after the decision of the case cited above, the heirs and the widow and purchaser, moved a rule on three persons, who had judicial mortgages recorded against two of the heirs, and upon the Recorder of mortgages, to shew cause why they should not be erased. That is the commencement of the contestation now before us.
Augustus F. Hickman is one of these three, and he answers the rule, alleging that the whole proceedings in and for partition are null, because the heirs had already been put in possession of the property, and the succession was therefore at. an end, and the Second court, being a court of Probate, was without jurisdiction. Thus we are brought face tó face with one of those questions of jurisdiction, which are vexatious without being useful — -upon which hinges the validity of ’protracted legal proceedings, and which after all involve no permanent legal principle, worthy to engage the intellect, but only a verbal construction, that is soon rendered of no service, by the adoption of another phraseology. It would be a boon to the bar, the bench, and to suitors, if the forum of jurisdiction could be fixed beyond dispute.
The object of our pains-taking, in making the foregoing connected narrative in detail, and by date, is now apparent. That the succession was ended by the judgment of October 5, 1875, and the heirs were thenceforward owners in common of the property of their ancestor is indubitable. The administratrix had rendered her final account, not to the court if you will, but to the heirs, who were masters of their own affairs, and no creditor of the deceased or of his succession interposed or objected. The heirs and the widow considered and treated that judgment as terminating the succession. Three days after it was rendered, one of them bases her right to a division of the property upon the fact that she and her co-heirs had been placed in possession of it, and as if designedly to exclude all idea of an existing succession, language is ■employed which is specially appropriate to persons who own property together — “she is unwilling longer to hold said property in common”— *509 and the court bases its decree upon the ascertained result of the pleadings and the evidence, that “ the parties to this suit are owners in common of the property.” Afterwards, throughout the notarial Act, they speak of the succession as a thing apart. The source of their information of the debts, which the purchaser assumed, is stated to be a tableau filed in court in the matter of the succession of J. P. Ereret, and ns if to superabundantly exhibit the recognition of the fact that each one of these owners in common possessed in his own' right, however derived the title was, it is recited — “in regard to certain judgments recorded against Gustave J. Ereret and William P. Ereret (and two other heirs) either separately or in solido, the widow Ereret, having taken cognisance of said certificate (of mortgages) declares notwithstanding, that she consents to abide by these presents.”
The parties to the partition suit being thus owners of the property as joint-tenants, or coparceners, or in commo'D, had the probate court jurisdiction of the subject matter? We have heretofore held that it had not. Woolfolk v. Woolfolk, 30 Annual, 139. The counsel for the heirs observes, that “the final decision of that case turned on other points, and that in the actual decision, the point of jurisdiction did not an l could not come under consideration, consequently that the original opinion on that point becomes an obiter dictum.” And this, notwithstanding we said in that final decision, speaking of the original opinion ; — “in that opinion we held that the parish court was without jurisdiction ratone materias in the matter of the partition, for the reason that * * * there was no longer a succession to be partitioned. We see no reason at present to change our-opinion as then expressed.” Ibid. 144.
We propose however to examine it anew, and we are impelled the more readily to do this, because in several matters touching the jurisdiction of the Second Court of Orleans, we have disturbed the practice that has hitherto obtained. The conservatism of the Profession has justly attributed great force and sanction to the rule stare decisis, as embodying a principle that lies at the foundation of stability and order, and we have too much reverence for it to lightly disregard it.
Our Civil Code devotes a special chapter, in that part which treats of Successions, to the manner in which their judicial partition is made, arts. 1245 et seq. new no. 1322. The Code of Practice gives minute directions as to the mode of procedure in that class of partition suits, arts. 1020 et seq. But to say, there are no other kinds, is to ignore the history of our courts and the evidence furnished by our Reports, to say nothing of the positive provisions of our law. Two or more proprietois of a piece of property, who had acquired it by purchase, donation, cr other mode, are not condemned to a perpetual joint ownership of it. *510 Hence we find the existence or the possibility of other kinds of partition •suits recognised, and provision made for them. In matters relative to. the partition of real property between several co-proprietors, the suit must be brought before the court of the situs of the property. Code Prac. art. 165. And in “ an Act relative to partitions,” not of succession property only, but of all property held in indivisión, provision is made for the forum when the property is in different parishes, and the partition is to be between two or more co-proprietors of one continuous •tract of land, (Sess. Acts 1855, p. 337 sec. 2. reenacting a law of 1832), while all partitions of successions must be made by the court where they have been opened. Code Prac. art. 164. par. 4.
The action of partition, regulated by the Civil Code, arts. 1250 — 1303 Inclusive, new nos. 1327 — 1381, is by express language the action for the partition of successions. The next Art. 1304 reads; — “All the rules established in the present section, with the exception of that which relates to collations, are applicable to partitions between co-proprietors of the same thing, when among the co-proprietors aDy are absent, minors, ■or interdicted, or when the co-prcprietors of age and present can nob agree on the partition, and on the manner of making it. But in these kinds of partition, the action must be brought before the judge of the ■place where the property to be divided is situated, wherever the parties' may be domiciliated.”
This article forms art. 1290 in the Revisal of 1870, being displaced. It applies the rules for succession partition, with a single exception, to those kinds of partition suits, where any of the co-proprietors were of certain classes, or without being of those classes, if they could not agree. All partition suits, other than those of successions and those above provided for, are placed out of the dominion of those minute exactions of details which the Code elaborates in the series of articles above cited. In other words, partition suits between co-proprietors, when they are present, or majors, or not interdicts, are not governed by the rules established in that section for the partition of successions.
So again, the law provided when heirs of a succession 'hold property in common, and wish to divide it, they may proceed in a certain way. Rev. Stats, sec. 2667. But this was found too narrow in its application. Why should not others than “heirs of a succession” divide common property in the same way ? And these words were stricken ■out, and in lieu of them were inserted, “ two or more persons, some or all of whom are minors.” Sess. Acts 1878, p. 47.
The counsel for the heirs endeavours to deduce from certain parts of the Code the idea that the common ownership of persons, who have inherited property, is but a continuation of the succession of the ancestor. Thus, though co-heirs have enjoyed their hereditary effects in *511 common for an hundred years and more, without making a division, any of them can at any time sue for a partition, art. 1227 new no. 1304. In other words, if the succession was not partitioned while it was a succession, or if the heirs, after the succession had ceased to exist, refrained from dividing it for a hundred years, that should not perforce be a bar to ever dividing it. And again, if one of the heirs has enjoyed the whole succession, or a part of it separately' — or if each have possessed separately a part of it — for thirty years, then each, thus separately possessing, can successfully oppose the suit for a partition of the effects of the succession, art. 1228 new no. 1305. In other words, a prescription of thirty years can be successfully pleaded in bar of any new partition, when an heir has undisturbedly enjoyed a particular piece of property of a succession as his own. But although the heir can hold on to a particular piece of property under those circumstances, if all the others have possessed the residue of the succession effects in common, either of those can always provoke a partition of such residue, art. 1229 new no. 1306.
Successions cannot continue long. They are intended to be short-lived. Our law emphatically limited their duration to one year, and if necessity demanded their prolongation, required the executor or administrator to obtain special permission from the court to continue his functions another year. They now continue in office until the estate is finally wound up. And it would avoid infinite confusion and great ultimate loss, if the probate courts would uniformly enforce the requirements for early settlement, although their enforcement would sometimes occasion present and immediate losses.
And if they are not perpetual, our law would be singularly defective if it did not determine when they do end. Their termination is fixed at the time when, all the debts appearing to be settled by a final account of their representative, the heirs are put in possession of the hereditary effects by a judgment of court, or when, the debts not being all paid, and the final account of the representative of his gestión being homologated, the heirs, nemine obstante, are put in possession by a judgment. In that case, provision is made for the compulsory payment of the unsatisfied debts, for which each heir is bound for his virile share.
In this case, the unpaid debts, with their attendant mortgages, were expressly assumed by the purchaser of the common propeity, each heir, relieving himself to the extent of his share, of that virile contribution, the liability for which attached the moment he was put in possession. The succession ceased when the judgment putting the heirs in possession was executed, and the property thenceforth became their common property as owners, and passed to their vendee, subject to whatever rights creditors of each individual heir had acquired.
*512 It is supposed, we infer from the tenour of the argument, that the nullity of the decree of sale made by the Second Court strikes the actual sale made by the heirs with an incurable infirmity. It is not so. The heirs were all majors. Irrespective of any judgment, they united in a sale of the property which they owned. They had a perfect, legal right to sell, and they did sell, but that sale did not destroy or affect tho mortgages a’ready existing against each of them. The creditor, with the lien resulting from recording his judgment, has the same recourse that he has against any other judgment debtor, who has made a voluntary sale of the property affected by such mortgage. Therefore,
It is ordered that the judgment of the lower court is avoided and reversed, and that the rule of the heirs and the purchaser is dismissed at their costs, and that the opponent have and recover of them the costs' of this appeal.